# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

LAWRENCE MARTIN                                                                                         PLAINTIFF
ADC # 106491

v.                                        5:13CV00364-KGB-JJV

CORIZON CORRECTIONAL
MEDICAL SERVICES; *et al.*                                                                          DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

  1.   Why the record made before the Magistrate Judge is inadequate.

  2.   Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

  3.   The details of any testimony desired to be introduced at the new hearing in the form

1

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

**DISPOSITION**

**I.     INTRODUCTION**

Defendants[1] have filed two Motions for Summary Judgment. (Doc. Nos. 176, 179.) The first seeks dismissal of all claims against two Defendants employed by Corizon Medical Services: Estella Bland and Lavanda White-Matthews (collectively "Medical Defendants"). The second is filed on behalf of Defendants employed by Arkansas Department of Correction ("ADC"): Gaylon Lay, Larry May, Eddie Selvey, Brenda Swygart, Crystal Wood, Mark Warner, Christopher Brown, Jeremy Jones, and Phillip Puckett (collectively "ADC Defendants"). Plaintiff filed a Response to the Medical Defendants' Motion. (Doc. Nos. 188, 190.) He has not responded to the ADC Defendants' Motion, and the time for doing has passed.

**II.    BACKGROUND**

Plaintiff claims his constitutional rights were violated when he was forced to perform prison work with physical demands exceeding his proper medical classification. (Doc. No. 2 at 6.) Specifically, he alleges he takes 'Enalapril,' a blood pressure medication which warns that use while exercising is dangerous. (*Id*. at 4.) He also contends that several ailments, namely a deformed left

---

[1] In the Conclusion, the Court recommends the Clerk of Court correct Defendants' names that are misspelled or incomplete on the docket.

foot, degenerative joint disease, and flat feet had previously excluded him from all 'field work,' and that such exclusion was proper. (*Id*. at 5.)

### III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### IV. ANALYSIS

Medical Defendants argue Plaintiff is unable to establish that they were deliberately indifferent to his serious medical needs. Specifically, they contend that his assigned work was non-strenuous and limited in duration. Additionally, they state the weight of evidence indicates Plaintiff was physically capable of safely performing his assigned tasks.

3

ADC Defendants argue that: (1) Plaintiff failed to exhaust his administrative remedies against Defendants Selvey, Warner, Brown, and Puckett; (2) no ADC Defendant exhibited deliberate indifference toward Plaintiff; (3) Defendants Larry May and Gaylon Lay are being sued only in their supervisory roles and, as such, are entitled to dismissal; (4) ADC Defendants are entitled to qualified immunity; and (5) sovereign immunity bars Plaintiff's official capacity claims for monetary damages.

The Court will begin by evaluating the Medical Defendants' arguments and, where appropriate, Plaintiff's responses.

### A. Medical Defendants

The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference includes intentional interference with prescribed treatment; inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "unnecessary and wanton infliction of pain"). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). However, "[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

The United States Court of Appeals for the Eighth Circuit has explained:

Prison doctors and guards violate the Eighth Amendment when they act with 'deliberate indifference to [an inmate's] serious medical needs.' 'Deliberate

4

indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Likewise, an inmate's 'mere disagreement with the course of his medical treatment' fails to state a claim of deliberate indifference.

*Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (citations omitted).

Medical Defendants' first argument is that the inside lawn duty[2] to which Plaintiff was assigned from May 15, 2013, to August 30, 2013, was not so strenuous as to present a health risk. They provide evidence that the job was limited in daily duration and punctuated by regular rest and water breaks. (Doc. No. 177-3.) Dr. Floss states in his affidavit that neither a diagnosis of hypertension nor a prescription for Enalapril would prohibit Plaintiff engaging in the activities associated with inside lawn duty. (Doc. No. 177-5 at 3.) Dr. Floss goes on to note that Plaintiff's medical records do not, in his opinion, indicate the need for any restrictions precluding assignment to inside lawn duty.[3] (*Id.*)

Plaintiff counters by arguing that Dr. Floss's testimony is worthless because it is not based on a personal examination. (Doc. No. 188 at 8.) The Court disagrees. There is no legal requirement that a physician personally conduct an examination prior to offering his expert opinion. Plaintiff's argument would carry weight if Dr. Floss were contending that his opinion was based on a

---

[2]ADC Defendant Swygart describes inside lawn duty as "mowing grass, picking up paper, assisting with trash call, working in the hallway performing various tasks." (Doc. No. 181-13 ¶ 8.)

[3]Dr. Floss notes that several work restrictions were initially recommended for Plaintiff by Dr. Suphan in 2007. (Doc. No. 177-5 at 3.) These restrictions included a prohibition on assignments "requiring prolonged crawling, stooping, running, jumping, walking, or standing; … strenuous physical activity for periods in excess of 4 hours; and restrictions for assignments requiring handling, lifting of heavy materials in excess of 19 pounds or requiring overhead work for a period in excess of 4 hours." (*Id.* at 2.) Dr. Warren reevaluated Dr. Suphan's notes on May 16, 2013, and concluded these restrictions were medically unnecessary. (*Id.*) Dr. Floss concurs with Dr. Warren's determination. (*Id.*)

personally-conducted physical exam, but he has made no such claim. Instead, he clearly notes that his opinion is based on a review of Plaintiff's medical records. (Doc. No. 177-5 at 1.)

Medical Defendants' next argument is based on a video which shows Plaintiff engaged in a physical altercation with an inmate on January 9, 2014. (Doc. No. 177-4.) They contend the video clearly demonstrates that Plaintiff is able-bodied and, therefore, capable of performing the tasks associated with inside lawn duty. Dr. Floss noted his agreement with this line of reasoning. (Doc. No. 177-5 at 3.) The video evidences Plaintiff's physical capability - he moves quickly, throws punches, and rises easily from a fall. (Doc. No. 177-4 at 0:01-0:28.) It would not, in the Court's judgment, provide a complete indicator of Plaintiff's fitness standing alone. But viewed in conjunction with the testimony of Dr. Floss, it holds value as one indicator of Plaintiff's physical ability.

Plaintiff offers no argument to the substance of the video. Instead, he argues the altercation holds no evidentiary value because Defendants failed to report the incident to an unspecified prosecutor. (Doc. No. 188 at 5.) This argument has no legal basis. The Court also declines to consider Plaintiff's contention that the video is additional evidence of Defendants' disregard for his rights. Defendants' alleged failure to prevent or properly respond to this altercation is unrelated to the medical claims which form the basis of this action.

Finally, Medical Defendants state they had limited opportunities to reevaluate Plaintiff's medical restrictions. Defendant Bland states that Plaintiff declined a physical on September 7, 2013, thereby negating an opportunity to reevaluate his medical classification. (Doc. No. 177-2 at 6.)[4] Additionally, Defendant White-Matthews states that her involvement with Plaintiff's medical

---

[4]The scan of the document is faded and impossible to read in its entirety. The Court takes Defendants' counsel, as an officer of the Court, at his word as to its contents. In so doing, it notes Plaintiff has not disputed its content in his responsive pleadings.

treatment was confined to answering his grievances. Plaintiff has not offered rebuttal arguments to either of these contentions.

Based on the foregoing evidence, the Court finds that Plaintiff is unable to establish that either Defendant Bland or White-Matthews exhibited deliberate indifference to his serious medical needs. It is settled law that "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotations omitted). Here, record evidence and the testimony of Dr. Floss both reflect that Plaintiff was properly classified and his assigned prison work did not represent a significant risk to his health. Plaintiff's unsubstantiated feelings to the contrary are insufficient to overcome the Medical Defendants' Motion for Summary Judgment. The Court recommends his claims against Defendants Bland and White-Matthews be dismissed with prejudice.

### B. ADC Defendants

#### 1. Administrative Exhaustion

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). Exhaustion under the PLRA is mandatory. *Jones*, 549 U.S. at 211. "[T]o properly exhaust administrative remedies, prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Compliance with a prison's grievance procedures is, therefore, all that is required by the PLRA to properly exhaust. *Id.* Thus,

the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See Id.*

ADC Directive 12-16 governs exhaustion of Plaintiff's claims. (Doc. No. 181-3.) The directive requires inmates to submit an informal resolution, a formal grievance, and an appeal to the Assistant and/or Deputy Director level in order to fully exhaust a claim. (Doc. No. 181-4 ¶ 5.) According to the affidavit of Barbara Williams, ADC Inmate Grievance Supervisor, Plaintiff exhausted four grievances – CU-13-01340, CU-13-01435, CU-13-01608, and CU-13-02109 – which are relevant to the claims underlying this action. (*Id.* ¶ 8.) She states that none of these grievances identified Defendants Selvey, Warner, Brown, or Puckett and, therefore, no claims against them were exhausted. (*Id.*) The Court agrees.

Directive 12-16 clearly states a requirement that inmates must be specific as to the personnel involved in any grieved incident. (Doc. No. 181-3 at 5.) The Court has reviewed the grievances in question and confirmed that these four Defendants are not specifically named or otherwise referenced therein. (Doc. Nos. 181-5 - 181-8.) Plaintiff has not offered any argument to the contrary. Accordingly, the Court recommends that Defendants Selvey, Warner, Brown, and Puckett be dismissed without prejudice due to Plaintiff's failure to exhaust administrative remedies against them. *See Barbee v. Correctional Medical Services*, 394 Fed. Appx. 337, 338 (2010) ("Once the court determined that the claims were unexhausted, it was required to dismiss them without prejudice.").

    2.    Qualified Immunity[5]

---

[5]In their brief, ADC Defendants raise a separate argument that the weight of evidence does not support a violation of Plaintiff's Eighth Amendment rights. Analysis of that argument overlaps with a discussion of qualified immunity, and the Court elects to evaluate immunity first because "Qualified immunity is immunity from suit rather than a mere defense to liability, and therefore,

Qualified immunity protects officials who acted in an objectively reasonable manner and shields a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[6] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

After reviewing the record, the Court finds that the facts shown, construed in a light most favorable to Plaintiff, do not establish a violation of his rights. ADC Defendants state that Plaintiff

---

immunity issues should be resolved at the earliest possible stage of the litigation." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[6]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

9

received his medical classification based on determinations made by licensed medical personnel. (Doc. No. 181-13 ¶ 7.) In turn, his job assignment was based on the restrictions, or lack thereof, specified by his medical classification. (*Id.*) The Court is convinced that the overwhelming weight of evidence indicates that "inside lawn duty" did not exceed Plaintiff's physical abilities, as determined by medical staff. The record indicates that Plaintiff's work day was not particularly strenuous or long. Defendant Swygart avers that Plaintiff was primarily assigned to pick up trash, none of which exceeded his nineteen-pound lifting restriction. (*Id.* ¶ 10-11.) He was not made to work more than his four-hour restriction, and he was provided frequent breaks for water and rest. (Doc. Nos. 183-13 ¶ 10-12, 183-14.)

Even assuming, for the sake argument, that Plaintiff's medical classification was made erroneously, ADC Defendants would still not be liable. It is established that, where a defendant lacks medical expertise, they cannot be held liable for the diagnostic decisions of medical staff. *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Plaintiff's medical classification fits squarely within the category of a "diagnostic decision" and there is no evidence indicating that any ADC Defendant had the medical expertise to reach a different conclusion. As such, they were completely justified in relying on the determinations of the medical staff.

Based on the foregoing, the Court finds that Defendants Jones, Lay, May, Swygart, and Wood are entitled to qualified immunity and Plaintiff's claims against them should be dismissed.

        3.        Official Capacity Claims

Lastly, any official capacity claims for damages against the ADC Defendants should also be dismissed. These claims are akin to claims against the state itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). It necessarily follows that these official capacity damage claims are barred by the Eleventh Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).

## V.  CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. The Clerk of Court alter the docket to reflect that Defendant 'Bland' is 'Estella Bland'; Defendant 'Lanvada White-Matthews' is 'Lavanda White-Matthews'; Defendant 'Eddie Selbey' is 'Eddie Selvey'; Defendant 'Warner' is 'Mark Warner'; Defendant 'Plucket' is 'Phillip Puckett'; Defendant 'Brown' is 'Christopher Brown'; Defendant 'Jones' is 'Jeremy Jones.'

2. Defendants' Motion for Summary Judgment (Doc. No. 176) be GRANTED.

3. Defendants Estella Bland and Lavanda White-Matthews be DISMISSED with prejudice.

4. Defendants' Motion for Summary Judgment (Doc. No. 179) be GRANTED.

5. Defendants Eddie Selvey, Mark Warner, Christopher Brown, and Phillip Puckett be DISMISSED without prejudice due to Plaintiff's failure to exhaust administrative remedies against them.

6. Defendants Jeremy Jones, Gaylon Lay, Larry May, Brenda Swygart, and Crystal Wood be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 2nd day of April, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE